U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

OCT 17 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | : | DOCKET NO. 2:08-00018 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| ARGELIO CESAR CARDENAS | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Presently before the court is a Motion to Suppress [doc. 17] filed by the defendant, Argelio Cesar Cardenas ("Cardenas"). The Government filed a Motion and Memorandum in Support [doc. 18] asking the court to require a Memorandum in Support from the defendant. The court denied this motion [doc. 23], but the defendant had filed a supplemental memorandum prior to this order being filed. The Government filed a Memorandum in Opposition [doc. 22] to the defendant's motion.

Facts

On February 28, 2005 at 10:50 a.m., Captain Robert Smith, with the Combined Anti-drug Taskforce, observed a maroon and grey Chevy S-10 pickup truck traveling with emergency flashers and failing to signal properly when changing lanes. Captain Smith stopped the vehicle. The stop took place on I-10 at mile marker 26 in the Western District of Louisiana. The occupants of the vehicle were Argelio Cesar Cardenas and his stepson, Jorge Alberto Trevino.

Officer Smith spoke to Trevino at the rear of the vehicle in English without any difficulty. Trevino provided the license and vehicle information requested, and answered a few questions during the stop. After receiving this information from Trevino, the officer ran the appropriate traffic

checks through his computer. Officer Smith asked Trevino about the possibility of illegal narcotics or large sums of currency and requested Trevino's consent to search the entire vehicle and its contents to ensure there was nothing illegal. Officer Smith advised Trevino this was only a request and that he could withhold authorization. Trevino replied it was okay to search the truck. Officer Smith asked Trevino to inform his stepfather of the request. Trevino walked over to the truck, spoke Spanish to Cardenas, and replied to Officer Smith that it was okay to search the vehicle. Officer Smith again informed Cardenas, through Trevino, that it was only a request and that he could say no. After relaying this message in Spanish to his stepfather, Trevino replied to Officer Smith that it was okay to search the vehicle.

During the search Officer Smith noticed an open tube of blue silicone and tools on the floor of the truck. Officer Smith checked the undercarriage of the truck, and notice bolts that held the bed of the truck to the frame had fresh tool marks on them. Officer Smith called another officer to obtain a fiber optic viewing device. Officer Smith observed additional tool marks on bolts under the truck, and noticed one was partially unscrewed. Officer Jones arrived with a fiber optic scope, and the officers used the device to inspect the inside of the gas tank. Several floating objects were observed. Officer Smith asked Cardenas if they could take the vehicle to a shop to investigate further the suspicious objects floating in the gas tank. Cardenas replied "okay."[1] At the garage, approximately $212,405.00 in United States currency was found hidden in the truck in plastic heat sealed bundles floating in the gas tank, and in a false bottom of a black bag.

On January 16, 2008, Argelio Cardenas was indicted by a federal grand jury for violation of

---

[1] Trevino was not standing next to his stepfather when this question was asked, but Trevino was present and accompanied his stepfather and the truck to the garage.

2

31 U.S.C. § 5332(a)(1), bulk cash smuggling into or out of the United States. On July 21, 2008, Mr. Cardenas filed a *Motion to Suppress* setting forth general allegations that his constitutional rights were violated, and has requested this Court to suppress all evidence and statements illegally and unconstitutionally obtained. After an objection by the government, Cardenas filed a supporting memorandum with additional details.

Law

An evidentiary hearing has not been requested in this case and there does not appear to be any factual disputes. Cardenas's motion questions the validity of the second consent, as Cardenas is not fluent in English.

The defendant asserts that after an initial traffic stop of the defendant and his stepson, the investigating officer separated the two and questioned them individually. During the questioning the stepson was allowed to return to the vehicle and requested (in Spanish) the title from the defendant. The investigating officer acknowledges being told the defendant spoke little English. The stepson and the defendant (after being asked in Spanish) consented to an initial search of their persons and their vehicle. The officer then told the defendant (without Spanish translation) there was something wrong in the gas tank and the officer wanted permission to move the truck to the city shop where they had the manpower and tools to dismantle it. The officer asserts that Cardenas agreed and then the officer informed the stepson of the defendant's acquiescence. After the truck was dismantled, bags of U.S. currency were discovered.

The defendant asserts that the consent to search the gas tank was not valid as Cardenas was asked outside of the presence of his stepson when it should have been clear to the officers that he did not speak fluent English. The government argues that the original consent to search the vehicle was

valid and informed. As such, that consent remained valid throughout the search. Additionally, the government asserts that there was probable cause to remove the vehicle from the highway at the point they informed Cardenas of this intention.

Voluntariness-of-consent rulings are reviewed for clear error under a totality-of-the-circumstances test. *United States v. Tompkins,* 130 F.3d 117, 120-21 (5th Cir.1997); *United States v. Ponce,* 8 F.3d 989, 997 (5th Cir.1993). The record supports the conclusion that Cardenas's stepson, Jorge Alberto Trevino, and Officer Smith were able to communicate sufficiently in English, that Trevino and Cardenas understood that they were giving the initial consent to search, that there is no evidence of threats or coercive tactics, and that Trevino was sufficiently intelligent to understand the situation. Considering these facts, it has been established that the initial consent was voluntary and in fact, this initial consent has not been challenged by the defendant. There is no evidence or assertion that the initial consent was ever withdrawn.

During the search following the initial consent, Officers noticed suspicious items and tool markings indicating the truck may have been recently dismantled. The truck had Georgia plates, and was traveling to the Mexico border as indicated by Trevino. After fresh tool marks were noticed on the bottom of the vehicle, a fiber optic scope was used roadside to peer into the gas tank. The fiber optic scope allowed Officers to see objects floating in the gas tank. The government argues that seeing these floating objects in the gas tank gave the Officers probable cause to believe the truck contained hidden illegal objects.

It is well-established that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *United States v. Lopez-Moreno,* 420

4

F.3d 420, 431 (5th Cir. 2005); *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003).

Trevino and Cardenas did not object at the roadside and they traveled without objection to the garage. Trevino, who was fluent in English, was present the entire time, did not withdraw his initial consent, nor did Cardenas. The search continued at the garage in the presence of the defendants and the bags of money that were floating in the gas tank were recovered.

Trevino and Cardenas placed no limits on the initial consent to the search and there is no evidence that they withdrew the consent to the search at any time prior to the currency being located. *See United States v. Valerio-Santibanez*, 81 Fed.App'x. 836, 837-38 (5th Cir. 2003); *Florida v. Jimeno*, 500 U.S. 248 (1991); *United States v. McSween*, 53 F.3d 684, 688 (5th Cir.1995). Accordingly, the Government has established by a preponderance of the evidence that the defendant's consent was knowing, voluntary and not revoked. The defendant's Motion to Suppress will be denied.

Lake Charles, Louisiana, this 17 day of October, 2008.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE